1  DAVID D. PIPER, CASB No. 179889
   david.piper@kyl.com
2  ESTHER E. CHO, CASB No. 204526
   esther.cho@kyl.com
3  KEESAL, YOUNG & LOGAN
   A Professional Corporation
4  400 Oceangate, P.O. Box 1730
   Long Beach, California 90801-1730
5  Telephone:   (562) 436-2000
   Facsimile:   (562) 436-7416
6
7  Attorneys for Defendants
8  U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE,
   SUCCESSOR IN INTEREST TO BANK OF AMERICA,
9  NATIONAL ASSOCIATION AS TRUSTEE AS
   SUCCESSOR BY MERGER TO LASALLE BANK,
10 NATIONAL ASSOCIATION AS TRUSTEE FOR
   WASHINGTON MUTUAL PASS THROUGH
11 CERTIFICATES WMALT SERIES 2007-0A2
   (ERRONEOUSLY SUED HEREIN AS LA SALLE BANK,
12 NA,), JPMORGAN CHASE BANK, N.A. and MORTGAGE
   ELECTRONIC REGISTRATION SYSTEMS, INC.
13

14

15              UNITED STATES DISTRICT COURT

16             CENTRAL DISTRICT OF CALIFORNIA

17

18 DENNIS M. ALFORD,                    ) Case No. CV13-4728
                                        )
19                      Plaintiff,      ) **DEFENDANTS' REQUEST FOR**
                                        ) **JUDICIAL NOTICE IN SUPPORT OF**
20          vs.                         ) **MOTION TO DISMISS THE**
                                        ) **COMPLAINT**
21 1) LASALLE BANK NA, as Trustee for   )
   WASHINGTON MUTUAL PASS-              ) Date:   January 27, 2014
22 THROUGH CERTIFICATES WMALT           ) Time:   10:00 a.m.
   SERIES 2007-OA2; 2) JP MORGAN        ) Place:  Courtroom 1600
23 CHASE BANK NATIONAL                  )
   ASSOCIATION; 3) MORTGAGE             ) Discovery Cutoff:  None Set
24 ELECTRONIC REGISTRATION              ) Motion Cutoff:     None Set
   SYSTEMS, INC.; and 4) DOES 1         ) Trial Date:        None Set
25 THROUGH 10, INCLUSIVE,               )
                                        )
26                                      )
                     Defendants.        )
27                                      )
                                        )
28 _____  )

KYL_LB1679141

TO THE HONORABLE COURT AND PLAINTIFF:

Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, Defendants JPMORGAN CHASE BANK, N.A. and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (collectively, "Defendants") request the Court take judicial notice of the following documents submitted in support of Defendants' Motion to Dismiss the Complaint:

1.    Exhibit 1:  A true and correct copy of a Grant Deed which was recorded or about July 21, 2003 with the Los Angeles County Recorder's Office as instrument number 03-2065597.

2.    Exhibit 2:  A true and correct copy of a Deed of Trust ("DOT") encumbering the Subject Property.  The DOT was recorded with the Los Angeles County Recorder's Office on October 11, 2006 as instrument number 06-2255552.  The Deed of Trust secures the promissory note signed by Plaintiffs in the principal amount of $980,000 ("Subject Loan").

3.    Exhibit 3:  A true and correct copy of an Assignment Deed of Trust which was recorded on January 21, 2009, with the Los Angeles County Recorder's Office as instrument number 2009-0078330.

4.    Exhibit 4:  A true and correct copy of a Substitution of Trustee in connection with the DOT which was recorded on or about January 21, 2009, with the Los Angeles County Recorder's Office as instrument number 20090078331 substituting California Reconveyance Company as Trustee of the DOT.

5.    Exhibit 5:  A true and correct copy of a Notice of Default and Election to Sell Under Deed of Trust ("NOD") in connection with the DOT and Loan which was recorded on or about January 21, 2009 with the Los Angeles County Recorder's Office as instrument number 20090078332.

6.    Exhibit 6:  A true and correct copy of a Grant Deed which was recorded on or about March 20, 2009 with the Los Angeles County Recorder's Office as instrument number 2009-0408424.

KYL_LB1679141

7.     Exhibit 7:  A true and correct copy of a Notice of Trustee's Sale ("NOTS") in connection with the DOT which was recorded on or about April 24, 2009, with the Los Angeles County Recorder's Office as instrument number 2009-0599092.

8.     Exhibit 8:  A true and correct copy of a Second Notice of Trustee's Sale ("Second NOTS") in connection with the DOT which was recorded on or about January 21, 2011, with the Los Angeles County Recorder's Office as instrument number 2011-0116989.

9.     Exhibit 9:  A true and correct copy of a Third Notice of Trustee's Sale ("Third NOTS") in connection with the DOT which was recorded on or about October 27, 2011, with the Los Angeles County Recorder's Office as instrument number 2011-1457482.

10.     Exhibit 10:  A true and correct copy of a Fourth Notice of Trustee's Sale ("Fourth NOTS") in connection with the DOT which was recorded on or about March 7, 2012, with the Los Angeles County Recorder's Office as instrument number 2012-0360486.

11.     Exhibit 11:  A true and correct copy of the Fifth Notice of Trustee Sale ("Fifth NOTS") in connection with the DOT which was recorded on or about May 31, 2013, with the Los Angeles County Recorder's Office as instrument number 2013-0817017.

Judicial notice is appropriate for Exhibits 1–11 pursuant to Federal Rules of Evidence Rule 201(b)(2) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."). *See also Poseidon Dev., Inc. v. Woodland Lane Estates, LLC*, 152 Cal. App. 4th 1106, 1117 (2007) ("A court may take judicial notice of something that cannot reasonably be controverted, even if it negates an express allegation of the pleading."  "This includes recorded deeds."); *McElroy v. Chase Manhattan Mortg. Corp.*, 134 Cal. App. 4th 388, 394 (2005) (taking judicial notice of a notice of default and notice of trustee's sale);

KYL_LB1679141

1    *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 264 (2011) ("The official

2    act of recordation and the common use of a notary public in the execution of such

3    documents assure their reliability, and the maintenance of the documents in the

4    recorder's office makes their existence and text capable of ready confirmation, thereby

5    placing such documents beyond reasonable dispute.").

6

7

8    DATED:  November 20, 2013          _____

9                                       DAVID D. PIPER
                                        ESTHER E. CHO
10                                      KEESAL, YOUNG & LOGAN
                                        Attorneys for Defendants
11                                      U.S. BANK NATIONAL ASSOCIATION
                                        AS TRUSTEE, SUCCESSOR IN
12                                      INTEREST TO BANK OF AMERICA,
                                        NATIONAL ASSOCIATION AS
13                                      TRUSTEE AS SUCCESSOR BY
                                        MERGER TO LASALLE BANK,
14                                      NATIONAL ASSOCIATION AS
                                        TRUSTEE FOR WASHINGTON
15                                      MUTUAL PASS THROUGH
                                        CERTIFICATES WMALT SERIES 2007-
16                                      0A2 (ERRONEOUSLY SUED HEREIN
                                        AS LA SALLE BANK, NA,),
17                                      JPMORGAN CHASE BANK, N.A. and
                                        MORTGAGE ELECTRONIC
18                                      REGISTRATION SYSTEMS, INC.
19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1



**This page is part of your document - DO NOT DISCARD**

## 03 2065597

> RECORDED/FILED IN OFFICIAL RECORDS
> RECORDER'S OFFICE
> LOS ANGELES COUNTY
> CALIFORNIA
>
> JUL 21 2003    AT 8 A.M.

**TITLE(S) :** _deed_



L E A D    S H E E T

**FEE**

| FEE $13 | E |
|---|---|
| | 3 |

**D.T.T**

1,039.50

**NOTIFICATION SENT $4** 

**CODE**
20

**CODE**
19

**CODE**
9

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**

7584 - 018 - 030

**Number of Parcels Shown**

001

**THIS FORM NOT TO BE DUPLICATED**



PAICOLA/RESALE

7/21/03

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:
Catherine C. Freeman
Denise R. Richey
28125 Lobrook Drive
Rancho Palos Verdes, CA 90275

03 2065597

2

_____
Space Above This Line for Recorder's Use Only

A.P.N.: 7584-018-030          Order No.: 879643-12          Escrow No.: 1806CW

## GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $1,039.50 & CITY $.00

[ X ]   computed on full value of property conveyed, or
[ ]   computed on full value less value of liens or encumbrances remaining at time of sale,
[ ]   unincorporated area;  [ X ] City of  Rancho Palos Verdes , and

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,
**Sung Hee Choi, a married woman as her sole and separate property**

hereby GRANT(S) to  **Catherine C. Freeman, a widow and Denise R. Richey, a single woman as joint tenants**

the following described property in the City of **Rancho Palos Verdes**, County of **Los Angeles** State of California;

**See Exhibit "A" attached hereto and made a part hereof.**

Continued On Page 2

Mail Tax Statements to:   SAME AS ABOVE  or  Address Noted Below

7/21/03

3

.P.N.: **7584-018-030**

Continued From Page 1

Sung Hee Choi

Document Date: May 28, 2003

STATE OF CALIFORNIA                           )SS
COUNTY OF Los Angeles
On 6-3-03          before me, K B Anderson
personally appeared Sung Hee Choi
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by
his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the
instrument.
WITNESS my hand and official seal.
Signature

This area for official notarial seal.



K. B. ANDERSON
Commission # 1301653
Notary Public - California
Los Angeles County
My Comm. Expires Apr 20, 2005



K. B. ANDERSON
Commission # 1301653
Notary Public - California
Los Angeles County
My Comm. Expires Apr 20, 2005



K. B. ANDERSON
Commission # 1301653
Notary Public - California
Los Angeles County
My Comm. Expires Apr 20, 2005

RECORDER'S MEMO:
POOR RECORD IS DUE TO
QUALITY OF ORIGINAL DOCUMENT

03 2065597

7/21/03

# EXHIBIT " A "

Order Number: **879643 (12)**

4

**LEGAL DESCRIPTION**

Real property in the City of Rancho Palos Verdes, County of Los angeles, State of California,
described as follows:

LOT 9 OF TRACT NO. 25801, IN THE CITY OF RANCHO PALOS VERDES, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 763 PAGES 68 AND 69 OF
MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES IN
AND UNDER SAID LAND, WHICH LIE BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF
SAID LAND, WITHOUT THE RIGHT TO ENTER UPON OR OTHERWISE USE THE SURFACE OF
SAID LAND, OR THE SUBSURFACE THEREOF TO A DEPTH OF 500 FEET FROM THE SURFACE OF
SAID LAND, BUT WITH NO RIGHT TO DRILL IN, INTO AND THROUGH THAT PORTION OF THE
SUBSURFACE OF SAID LAND LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF
SAID LAND FOR THE PURPOSE OF EXPLORING, PROSPECTING, EXTRACTING AND REMOVING
ANY AND ALL OF THE ABOVE MENTIONED SUBSTANCES, FROM SURFACE LOCATION ON LANDS
OTHER THAN THE LANDS HEREIN DESCRIBED AS GRANTED TO BEVERLY REALTY CO., A
CALIFORNIA CORPORATION, IN DEED RECORDED MAY 21, 1968 AS INSTRUMENT NO. 68-2249,
OFFICIAL RECORDS.

APN: 7584-018-030

*First American Title*       03 2065597

# EXHIBIT 2



**This page is part of your document - DO NOT DISCARD**

# 06 2255552

```
RECORDED/FILED IN OFFICIAL RECORDS
        RECORDER'S OFFICE
      LOS ANGELES COUNTY
           CALIFORNIA
```

# 10/11/06 AT 08:00AM

## TITLE(S) :



L E A D   S H E E T

| FEE | | D.T.T. |
|---|---|---|
| | Code 01 - 67.00    Code T008 - 001 | |
| | Code 18 - 04.00 | |
| | Code 20 - 02.00 | |
| | Code 19 - 63.00 | |

**CODE 20**

**CODE 19**

**CODE 9**

*Grand Total = $136.00*          *Page Count = 21*

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**    **Number of AIN's Shown**

### THIS FORM IS NOT TO BE DUPLICATED

RECORDING REQUESTED BY
TICOR TITLE
TUSTIN-ORANGE CO. BRANCH

887421-12

06 2255552

Recording Requested By:
LOAN LINK FINANCIAL SERVICES

And After Recording Return To:
LOAN LINK FINANCIAL SERVICES
26800 ALISO VIEJO PARKWAY, STE. 100
ALISO VIEJO, CALIFORNIA 92656
Loan Number: 6320601425-00

7584-018-030

[Space Above This Line For Recording Data]

# DEED OF TRUST

**MIN:** 100134400030114051

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated   OCTOBER 2, 2006        , together with all Riders to this document.
**(B)** "**Borrower**" is   DENISE R. RICHEY, A SINGLE WOMAN AND CATHERINE FREEMAN, AN UNMARRIED WOMAN AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.
**(C)** "**Lender**" is   LOAN LINK FINANCIAL SERVICES

Lender is a   CALIFORNIA CORPORATION                                                   organized
and existing under the laws of   CALIFORNIA
Lender's address is   26800 ALISO VIEJO PARKWAY, STE. 100, ALISO VIEJO, CALIFORNIA 92656

**(D)** "**Trustee**" is   TICOR TITLE COMPANY
18302 IRVINE BLVD, SUITE 100, TUSTIN, CALIFORNIA 92780

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI  48501-2026, tel. (888) 679-MERS.
**(F)** "**Note**" means the promissory note signed by Borrower and dated   OCTOBER 2, 2006        .
The Note states that Borrower owes Lender   NINE HUNDRED EIGHTY THOUSAND AND 00/100                              Dollars (U.S. $ 980,000.00        ) plus interest.

Borrower Initials: _DRl_    _CF_

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic EFORMS 800-649-1362
Form 3005 01/01                                        Page 1 of 14                                        www.docmagic.com

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
NOVEMBER 1, 2046 .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Planned Unit Development Rider | |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider | |
| ☐ 1-4 Family Rider | ☐ Second Home Rider | |
| ☐ Condominium Rider | ☐ Other(s) [specify] | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of
the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

Borrower Initials: _LRR_  _OF_ _____  _____  _____  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        DocMagic ℰ𝐹𝑜𝑟𝑚𝑠 800-649-1362
Form 3005 01/01                    Page 2 of 14                                        www.docmagic.com

06 2255552

4

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY              of          LOS ANGELES                    :
[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 7584-018-030

which currently has the address of  28125 LOBROOK DRIVE
                                                          [Street]

RANCHO PALOS VERDES           , California    90275-3133  ("Property Address"):
           [City]                                     [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    **UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
    1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

Borrower Initials: _____  _____  _____  _____  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      *DocMagic* *€Ferms* 800-649-1362
Form 3005 01/01                              Page 3 of 14                                      www.docmagic.com

06 2255552

5

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    3.   **Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

Borrower Initials:  _DRR_   _Cft_  _____   _____   _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          *DocMagic* ℰℱₒᵣₘₛ 800-649-1362
Form 3005 01/01                                    Page 4 of 14                                     www.docmagic.com

**06 2255552**

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Borrower Initials: _____ _____ _____ _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS         DocMagic *eForms* 800-649-1362
Form 3005 01/01         Page 5 of 14         www.docmagic.com

**06 2255552**

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Borrower Initials:

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                                Page 6 of 14

*DocMagic eForms* 800-649-1362
www.docmagic.com

06 2255552

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Borrower Initials: _SRR_  _CF_  _____  _____  _____  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                                    Page 7 of 14

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

**06 2255552**

9

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction:  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

Borrower Initials *ARR*   *CF*  _____   _____   _____   _____   _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                Page 8 of 14

*DocMagic €⊡ſ⊡rms* 800-649-1362
www.docmagic.com

06 2255552

or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"):  (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.  Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then:  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note).  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.  Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires

Borrower Initials:

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS            *DocMagic* *CForms* 800-649-1362
Form 3005 01/01                                        Page 9 of 14                                     www.docmagic.com

**06  2255552**

otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument:  (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of:  (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower:  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Borrower Initials: _____ _____ _____ _____ _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                   Page 10 of 14

**06 2255552**

*12*

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action

Borrower Initials: _____ _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 11 of 14                        *DocMagic eForms* 800-649-1362
                                                                                        www.docmagic.com

**06 2255552**

*13*

required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

   If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

   Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

   **23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

   **24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

   **25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

10/11/06

Borrower Initials: *DRL*   *CF*   _____   _____   _____   _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                        Page 12 of 14

*DocMagic* *Express* 800-649-1362
www.docmagic.com

**06 2255552**

*14*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security
Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
DENISE R. RICHEY              -Borrower          CATHERINE FREEMAN             -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                        -Borrower

Witness:                                          Witness:

_____                  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic eRarms 800-649-1362
Form 3005 01/01                                   Page 13 of 14                        www.docmagic.com

06 2255552

State of California                    )
                                       ) ss.
County of LOS ANGELES                  )

    On OCTOBER 2, 2006      before me,  ROGELIO FRAUSTO , NOTARY PUBLIC

personally appeared   DENISE R. RICHEY, CATHERINE FREEMAN

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(S) whose name(S)
~~is~~/are subscribed to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their
authorized capacity(IES), and that by ~~his/her~~/their signature(S) on the instrument the person(S), or the entity upon
behalf of which the person(S) acted, executed the instrument.

WITNESS my hand and official seal.

ROGELIO FRAUSTO
COMM. # 1567841
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. APRIL 9, 2009

NOTARY SIGNATURE

ROGELIO FRAUSTO
(Typed Name of Notary)

NOTARY SEAL

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 14 of 14

*DocMagic* eFarms 800-649-1362
www.docmagic.com

06 2255552

16

Loan Number: 6320601425-00

Date: OCTOBER 2, 2006

Property Address: 28125 LOBROOK DRIVE, RANCHO PALOS VERDES, CALIFORNIA
90275-3133

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

A.P.N. # : 7584-018-030

DocMagic €Ferrems 800-649 1362
www.docmagic.com

**06 2255552**

ORDER NO.: 887421-12

*17*

# EXHIBIT "A"

LOT(S) 9 OF TRACT NO. 25801, IN THE CITY OF RANCHO PALOS VERDES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 763, PAGE(S) 68 AND 69 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

06 2255552

Form PR-S                              Page 3

*18*

MIN: 100134400030114051              Loan Number: 6320601425-00
Doc ID#:

## ADJUSTABLE RATE RIDER
**(MTA-Twelve Month Average Index - Payment Caps)**

THIS ADJUSTABLE RATE RIDER is made this      2nd      day of OCTOBER
2006           , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
LOAN LINK FINANCIAL SERVICES, A CALIFORNIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and
located at:
28125 LOBROOK DRIVE, RANCHO PALOS VERDES, CALIFORNIA 90275-3133
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT
THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL
AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY
BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agrees as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

**2.   INTEREST**
**(A)  Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I
will pay interest at a yearly rate of    1.240 %.  The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any
default described in Section 7(B) of the Note.

**(B)  Interest Rate Change Dates**
The interest rate I will pay may change on the      1st      day of DECEMBER
2006            , and on that day every month thereafter. Each date on which my interest
rate could change is called an "Interest Rate Change Date." The new rate of interest will become
effective on each Interest Rate Change Date. The interest rate may change monthly, but the
monthly payment is recalculated in accordance with Section 3.

Borrower Initials:  _DRR_   _CF_   _____   _____   _____   _____

**PayOption MTA ARM Rider**
**FE-5315 (0511)**                         Page 1 of 5

**06 2255552**

19

**(C)  Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 650/1000        percentage point(s)   3.650 % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than   9.950 %.  Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3.  PAYMENTS**

**(A)  Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the     1st        day of each month beginning on DECEMBER 1, 2006 . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on NOVEMBER 1, 2046 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 26800 ALISO VIEJO PARKWAY, STE. 100, ALISO VIEJO, CALIFORNIA 92656
or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 2,590.72        unless adjusted under Section 3 (F).

**(C)  Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the   1st     day of DECEMBER, 2007  , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below.  If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

Borrower Initials:
PayOption MTA ARM Rider
FE-5315 (0511)                              Page 2 of 5

**06  2255552**

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**

Since my monthly amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED TEN AND 000/1000          percent ( 110.000 %)of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**

On the    5th      Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**PayOption MTA ARM Rider**

FE-5315 (0511)                                           Page 3 of 5

Borrower Initials: _____  _____  _____  _____  _____  _____

06 2255552

**(H)  Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i)   **Interest Only Payment:**  the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)   **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii)   **15 Year Amortized Payment:**  the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Borrower  Initials: _____  _____  _____  _____  _____  _____

PayOption MTA ARM Rider

**FE-5315 (0511)**                   Page 4 of 5

**06  2255552**

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____                    -Borrower
DENISE R. RICHEY

_____                    -Borrower
CATHERINE FREEMAN

_____                    -Borrower

_____                    -Borrower

PayOption MTA ARM Rider
FE-5315 (0511)                        Page 5 of 5

06 2255552

# EXHIBIT 3

**This page is part of your document - DO NOT DISCARD**



# 20090078330



**Pages:
0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**01/21/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 14.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 14.00 |

## TITLE(S) : ASSIGNMENT TRUST DEED



**L E A D S H E E T**



200901210210010

001185335

**SEQ:
13**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY

CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: N 11 06 12
Chatsworth, CA 91311



01/21/2009

*20090078330*

_____

Space above this line for recorder's use only

Trustee Sale No. 729465CA    Loan No. 5304000580    Title Order No. 080172003-CA-MAI

## IMPORTANT NOTICE

NOTE: After having been recorded, this Assignment should be kept with the
Note and the Deed of Trust hereby assigned.

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to LaSalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2007-OA2 Trust all beneficial interest under that certain Deed of Trust dated 10/02/2006, executed by DENISE R. RICHEY, A SINGLE WOMAN AND CATHERINE FREEMAN, AN UNMARRIED WOMAN AS JOINT TENANTS, as Trustor; to TICOR TITLE COMPANY as Trustee; and Recorded 10/11/2006, Book , Page , Instrument 06 2255552 of official records in the Office of the County Recorder of LOS ANGELES County, California. **APN:** 7584-018-030 **Situs:** 28125 LOBROOK DRIVE, , RANCHO PALOS VERDES, CA 90275-3133

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part, the real property described therein.

DATE: January 20, 2009

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

_____
Huey-Jen Chiu, Vice President

1

FA_MERGE.DOC

ß∉

Trustee Sale No. 729465CA Loan No. 5304000580 Title Order No. 080172003-CA-MAI

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On January 20, 2009 before me, JASON M MAGGARD, "Notary Public", personally appeared Huey-Jen Chiu, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

JASON M. MAGGARD
Commission # 1752335
Notary Public - California
Los Angeles County
My Comm. Expires Jun 21, 2011

FA_MERGE.DOC

2

# EXHIBIT 4



**This page is part of your document - DO NOT DISCARD**



# 20090078331




**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/21/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 11.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 11.00 |

## TITLE(S) : SUBSTITUTION TRUSTEE





**L E A D S H E E T**



200901210210010

001185335

**SEQ:**
**14**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: N 11 06 12
Chatsworth, CA  91311



01/21/2009

*20090078331*

_____
Space above this line for recorder's use only

Trustee Sale No. 729465CA    Loan No. 5304000580    Title Order No. 080172003-CA-MAI

# SUBSTITUTION OF TRUSTEE

WHEREAS, DENISE R. RICHEY, A SINGLE WOMAN AND CATHERINE FREEMAN, AN UNMARRIED WOMAN AS JOINT TENANTS, was the original Trustor, TICOR TITLE COMPANY, was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS), SOLELY AS NOMINEE FOR LENDER, LOAN LINK FINANCIAL SERVICES, IT'S SUCCESSORS AND ASSIGNS, was the original Beneficiary under that certain Deed of Trust dated 10/02/2006, Recorded 10/11/2006, Book , Page , Instrument 06 2255552 of official records in the office of the Recorder of LOS ANGELES County, California, and

APN: 7584-018-030 Situs: 28125 LOBROOK DRIVE, , RANCHO PALOS VERDES, CA 90275-3133
WHEREAS, LaSalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2007-OA2 Trust, the undersigned, is the present Beneficiary under said Deed of Trust, and,
WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place of and stead of said original Trustee thereunder.

Now, THEREFORE, the undersigned Beneficiary hereby substitutes CALIFORNIA RECONVEYANCE COMPANY, 9200 Oakdale Avenue N 110612, Chatsworth, CA 91311, as Trustee of Said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number indicates the plural.

DATE:  January 20, 2009
LaSalle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2007-OA2 Trust by JPMorgan Chase Bank, National Association, as attorney-in-fact

_____
Huey-Jen Chiu, Vice President

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On January 20, 2009 before me, JASON M MAGGARD, "Notary Public" personally appeared Huey-Jen Chiu, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

JASON M. MAGGARD
Commission # 1752335
Notary Public - California
Los Angeles County
My Comm Expires Jun 21, 2011

# EXHIBIT 5

**This page is part of your document - DO NOT DISCARD**



# 20090078332



**Pages: 0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/21/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 14.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 14.00 |

## TITLE(S) : NOTICE DEFAULT



**L E A D S H E E T**



200901210210010

001185335

**SEQ: 15**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: N 11 06 12
Chatsworth, CA 91311
800 892-6902
(818)775-2258 (Fax)



---

Space above this line for recorder's use only

Trustee Sale No. 729465CA   Loan No. 5304000580   Title Order No. 080172003-CA-MAI

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $19,904.79 as of January 20, 2009 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

Trustee Sale No. 729465CA   Loan No. 5304000580   Title Order No. 080172003-CA-MAI

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: JPMorgan Chase Bank, National Association, at 7301 BAYMEADOWS WAY , JACKSONVILLE, FL 32256, (877) 926-8937.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.  NOTICE IS HEREBY GIVEN THAT: CALIFORNIA RECONVEYANCE COMPANY is the duly appointed Trustee under a Deed of Trust dated 10/02/2006, executed by DENISE R. RICHEY, A SINGLE WOMAN AND CATHERINE FREEMAN, AN UNMARRIED WOMAN AS JOINT TENANTS, as trustor, to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS), SOLELY AS NOMINEE FOR LENDER, LOAN LINK FINANCIAL SERVICES, IT'S SUCCESSORS AND ASSIGNS, as Beneficiary Recorded 10/11/2006, Book , Page , Instrument 06 2255552 of official records in the Office of the Recorder of LOS ANGELES County, California, as more fully described on said Deed of Trust. APN: 7584-018-030 Situs: 28125 LOBROOK DRIVE, , RANCHO PALOS VERDES, CA 90275-3133 Including the note(s) for the sum of $980,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE 09/01/2008 INSTALLMENT OF PRINCIPAL AND INTEREST AND ALL SUBSEQUENT MONTHLY INSTALLMENTS OF PRINCIPAL AND INTEREST; PLUS ANY ADDITIONAL ACCRUED AND UNPAID AMOUNTS INCLUDING, BUT NOT LIMITED TO, LATE CHARGES, ADVANCES, IMPOUNDS, TAXES, HAZARD INSURANCE, ADMINISTRATIVE FEES, INSUFFICIENT AND PARTIAL RETURN CHECK FEES, STATEMENT FEES, AND OBLIGATIONS SECURED BY PRIOR ENCUMBRANCES.**

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of §2935.5.

DATE:  January 20, 2009

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

_____
Colleen Irby, Assistant Secretary

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

# EXHIBIT 6




**This page is part of your document - DO NOT DISCARD**



# 20090408424



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/20/09 AT 03:09PM**

| | | |
|---|---|---|
| FEES: | 36.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 36.00 |



**L E A D S H E E T**



200903200620050

**00000228824**



002021024

**SEQ:**
**01**

**DAR - Counter (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**





**RECORDING REQUESTED BY**

WHEN RECORDED MAIL TO

Dennis M. Alford
28125 Lobrook Drive
Rancho Palos Verdes, CA 90275

APN: 7584-018-030

# GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
DOCUMENTARY TRANSFER TAX is $ Ø_____   CITY TAX $ Ø_____
☐ computed on full value of property conveyed, or ☐ computed on full value less value of liens or
encumbrances remaining at time of sale, This is a bonafide gift and the grantor received nothing in return R & T
11911

☐ Unincorporated area: ☒ City of Rancho Palos Verdes, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

DENISE R. RICHEY, A SINGLE WOMAN and CATHERINE FREEMAN, AN UNMARRIED WOMAN

Hereby Grants to  DENNIS M. ALFORD, an unmarried man

the following described real property in the City of Rancho Palos Verdes, County of  Los Angeles, State of California:

LOT 9 OF TRACT 25801, IN THE CITY OF RANCHO PALOS VERDES, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 763 PAGES 68 AND 69 OF MAPS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY.

Commonly known as 28125 Lobrook Drive, Rancho Palos Verdes, CA 90275

Dated: February 11, 2009          *Denise R. Richey*
                                  DENISE R. RICHEY

                                  *Catherine Freeman*
                                  CATHERINE FREEMAN

STATE OF CALIFORNIA,
COUNTY OF LOS ANGELES

On 2-17-2009 before me, VIVIAN P. UPEGUI_____, who proved to me on the basis of
personally appeared DENISE R RICHEY
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[Notary seal: VIVIAN P. UPEGUI
COMM. # 1615556
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES OCT. 23, 2009]

Signature _____

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of  Los Angeles

On  March 18, 2009  before me, Catarina Zerbinatti Iwata, Notary Public
                                        (Here insert name and title of the officer)

personally appeared  Catherine Freeman

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph
is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public                            (Notary Seal)

CATARINA ZERBINATTI IWATA
Commission # 1670698
Notary Public - California
Los Angeles County
My Comm. Expires Jun 25, 2010

◆━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━◆

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

Grant Deed
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages  1  Document Date 02/11/09

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER
☑ Individual (s)
☐ Corporate Officer
    _____
             (Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM
*Any acknowledgment completed in California must contain verbiage exactly as
appears above in the notary section or a separate acknowledgment form must be
properly completed and attached to that document. The only exception is if a
document is to be recorded outside of California. In such instances, any alternative
acknowledgment verbiage as may be printed on such a document so long as the
verbiage does not require the notary to do something that is illegal for a notary in
California (i.e. certifying the authorized capacity of the signer). Please check the
document carefully for proper notarial wording and attach this form if required.*

* State and County information must be the State and County where the document
  signer(s) personally appeared before the notary public for acknowledgment.
* Date of notarization must be the date that the signer(s) personally appeared which
  must also be the same date the acknowledgment is completed.
* The notary public must print his or her name as it appears within his or her
  commission followed by a comma and then your title (notary public).
* Print the name(s) of document signer(s) who personally appear at the time of
  notarization.
* Indicate the correct singular or plural forms by crossing off incorrect forms (i.e.
  he/she/they, is/are ) or circling the correct forms. Failure to correctly indicate this
  information may lead to rejection of document recording.
* The notary seal impression must be clear and photographically reproducible.
  Impression must not cover text or lines. If seal impression smudges, re-seal if a
  sufficient area permits, otherwise complete a different acknowledgment form.
* Signature of the notary public must match the signature on file with the office of
  the county clerk.
  ❖ Additional information is not required but could help to ensure this
    acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a
    corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
* Securely attach this document to the signed document.

2008 Version CAPA v12.10.07 800-873-9865  www.NotaryClasses.com

# EXHIBIT 7

**This page is part of your document - DO NOT DISCARD**



# 20090599092



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/24/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 14.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 14.00 |



**L E A D S H E E T**



**200904240200007**

**00000417404**



**002077463**

**SEQ:**
**16**

**DAR - Title Company (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**     **T35**

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

04/24/2009

*20090599092*

| **Trustee Sale No.** | **729465CA** |
|---|---|
| Loan No. | 5304000580 |
| Title Order No. | 080172003-CA-MAI |

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10/02/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

    On 05/13/2009 at 10:30 AM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 10/11/2006, Book , Page , Instrument 06 2255552,          of official records in the Office of the Recorder of LOS ANGELES County, California, executed by: DENISE R. RICHEY, A SINGLE WOMAN AND CATHERINE FREEMAN, AN UNMARRIED WOMAN AS JOINT TENANTS, as Trustor, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS), SOLELY AS NOMINEE FOR LENDER, LOAN LINK FINANCIAL SERVICES, IT'S SUCCESSORS AND ASSIGNS, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state. Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust.  The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Place of Sale: THE FRONT ENTRANCE TO THE POMONA SUPERIOR COURTS BUILDING, 350 W. MISSION BOULEVARD, POMONA, CA

Legal Description:  LOT(S) 9 OF TRACT NO. 25801, IN THE CITY OF RANCHO PALOS VERDES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 763, PAGE(S) 68 AND 69 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
 EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

Amount of unpaid balance and other charges: $1,118,135.65 (estimated)

Street address and other common designation of the real property:     28125 LOBROOK DRIVE
                                                                       RANCHO PALOS VERDES, CA 90275-3133
                                                                       APN Number:   7584-018-030
    The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

3

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares:
that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or
that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid
foreclosure by one of the following methods: by telephone;  by United States mail; either 1st class or certified; by overnight
delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 04-22-2009

CALIFORNIA RECONVEYANCE COMPANY, as Trustee
(714) 259-7850 or www.fidelityasap.com
(714) 573-1965 or www.priorityposting.com

DEBORAH BRIGNAC, VICE PRESIDENT
9200 OAKDALE AVE
MAILSTOP N110612
CHATSWORTH, CA 91311

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT
COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

# EXHIBIT 8



**This page is part of your document - DO NOT DISCARD**

# 20110116989





**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/21/11 AT 08:00AM**

| | | |
|---|---|---:|
| **FEES:** | | 21.00 |
| **TAXES:** | | 0.00 |
| **OTHER:** | | 0.00 |
| **PAID:** | | 21.00 |



**L E A D S H E E T**



**201101210140013**

**00003639500**



**003115618**

**SEQ:**
**01**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**



t35

2

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902


01/21/2011
*20110116989*

**Trustee Sale No.   729465CA**
Loan No.          5304000580
Title Order No.   080172003-CA-MAI

Space above this line for recorder's use only

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10-02-2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 02-10-2011 at 10:30 AM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 10-11-2006, Book , Page , Instrument 06 2255552,        of official records in the Office of the Recorder of LOS ANGELES County, California, executed by:  DENISE R. RICHEY, A SINGLE WOMAN AND CATHERINE FREEMAN, AN UNMARRIED WOMAN AS JOINT TENANTS, as Trustor, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS), SOLELY AS NOMINEE FOR LENDER, LOAN LINK FINANCIAL SERVICES, IT'S SUCCESSORS AND ASSIGNS, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state.  Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust.  The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Place of Sale: AT THE WEST SIDE OF THE LOS ANGELES COUNTY COURTHOUSE,  DIRECTLY FACING NORWALK BOULEVARD, 12720 NORWALK BLVD. , NORWALK, CA

Legal Description:  LOT(S) 9 OF TRACT NO. 25801, IN THE CITY OF RANCHO PALOS VERDES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 763, PAGE(S) 68 AND 69 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.
 EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

Amount of unpaid balance and other charges: $1,131,784.21 (estimated)

Street address and other common designation of the real property:     28125 LOBROOK DRIVE
                                                                      RANCHO PALOS VERDES, CA 90275-3133
                                                                      APN Number:   7584-018-030
The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares:
that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or
that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid
foreclosure by one of the following methods: by telephone;  by United States mail; either 1st class or certified; by
overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 01-18-2011

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

ELVIA ARCINIEGA, ASSISTANT SECRETARY

For Sales Information:
(714) 730-2727 or www.lpsasap.com
(714) 573-1965 or www.priorityposting.com

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT
COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY
INFORMATION OBTAINED WILL BE USED FOR THAT

# EXHIBIT 9

**This page is part of your document - DO NOT DISCARD**



# 20111457482



**Pages:
0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/27/11 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201110270130010

00004867353

003586399

**SEQ:
07**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**          **T35**

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

10/27/2011

*20111457482*

**Trustee Sale No.**  **729465CA**
Loan No          5304000580
Title Order No    080172003-CA-MAI

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10-02-2006.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 11-17-2011 at 11 00 A M , CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 10-11-2006, Book , Page , Instrument 06 2255552,        of official records in the Office of the Recorder of LOS ANGELES County, California, executed by   DENISE R. RICHEY, A SINGLE WOMAN AND CATHERINE FREEMAN, AN UNMARRIED WOMAN AS JOINT TENANTS, as Trustor, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS), SOLELY AS NOMINEE FOR LENDER, LOAN LINK FINANCIAL SERVICES, IT'S SUCCESSORS AND ASSIGNS, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust.  The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

Place of Sale. BY THE FOUNTAIN LOCATED AT 400 CIVIC CENTER PLAZA, POMONA, CA 91766.

Legal Description:  LOT(S) 9 OF TRACT NO 25801, IN THE CITY OF RANCHO PALOS VERDES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 763, PAGE(S) 68 AND 69 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY
EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD

Amount of unpaid balance and other charges. $1,141,294.85 (estimated)

Street address and other common designation of the real property        28125 LOBROOK DRIVE
                                                                         RANCHO PALOS VERDES, CA 90275-3133
                                                                         APN Number.   7584-018-030
The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein  The property heretofore described is being sold "as is"

*3*

In compliance with California Civil Code 2923 5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone;  by United States mail; either 1st class or certified; by overnight delivery, by personal delivery, by e-mail, by face to face meeting

DATE  10-27-2011

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

CASEY KEALOHA, ASSISTANT SECRETARY

California Reconveyance Company
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA  91311
800-892-6902

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT
COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY
INFORMATION OBTAINED WILL BE USED FOR THAT

For Sales Information:
(714) 730-2727 or www.lpsasap.com
(714) 573-1965 or www.priorityposting.com

# EXHIBIT 10



**This page is part of your document - DO NOT DISCARD**



# 20120360486



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/07/12 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201203070170010

00005477269

003844132

**SEQ:**
**25**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

t35

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902



03/07/2012

*20120360486*

**Trustee Sale No.**   **729465CA**
Loan No.                5304000580
Title Order No.         080172003-CA-MAI

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10-02-2006.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 03-29-2012 at 11 00 A.M., CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 10-11-2006, Book , Page , Instrument 06 2255552,          of official records in the Office of the Recorder of LOS ANGELES County, California, executed by:  DENISE R. RICHEY, A SINGLE WOMAN AND CATHERINE FREEMAN, AN UNMARRIED WOMAN AS JOINT TENANTS, as Trustor, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS), SOLELY AS NOMINEE FOR LENDER, LOAN LINK FINANCIAL SERVICES, IT'S SUCCESSORS AND ASSIGNS, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state. Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust.   The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale

Place of Sale: BY THE FOUNTAIN LOCATED AT 400 CIVIC CENTER PLAZA, POMONA, CA 91766.

Legal Description   LOT(S) 9 OF TRACT NO 25801, IN THE CITY OF RANCHO PALOS VERDES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 763, PAGE(S) 68 AND 69 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
 EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD

Amount of unpaid balance and other charges: $1,322,064.33 (estimated)

Street address and other common designation of the real property:    28125 LOBROOK DRIVE
                                                                      RANCHO PALOS VERDES, CA 90275-3133
                                                                      APN Number:  7584-018-030
 The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

25

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares. that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone,  by United States mail; either 1st class or certified; by overnight delivery; by personal delivery, by e-mail; by face to face meeting.

DATE: 03-06-2012

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

BRENDA BATTEN, ASSISTANT SECRETARY

California Reconveyance Company
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA  91311
800-892-6902

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

For Sales Information.
(714) 730-2727 or www.lpsasap.com
(714) 573-1965 or www.priorityposting.com

# EXHIBIT 11

**This page is part of your document - DO NOT DISCARD**



# 20130817017



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/31/13 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201305310180072

00007801232



004906257

**SEQ:**
**14**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**                    t35

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

05/31/2013

*20130817017*

| **Trustee Sale No.** | **729465CA** |
|---|---|
| Loan No. | 5304000580 |
| Title Order No. | 080172003-CA-MAI |

_____

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

> *ATTENTION RECORDER*: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO
> THE NOTICE PROVIDED TO THE TRUSTOR ONLY.  **PURSUANT TO CALIFORNIA CIVIL CODE 2923.3**
>
> NOTE. THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
> 注 本文件包含一个信息摘要
> 참고사항 본 첨부 문서에 정보 요약서가 있습니다
> NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
> TALA. MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
> LƯU Ý. KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10-02-2006.  UNLESS YOU TAKE ACTION TO
PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE
NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

        On 06-24-2013 at 11:00 A.M., CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee
under and pursuant to Deed of Trust Recorded 10-11-2006, Book N/A, Page N/A, Instrument 06 2255552,        of
official records in the Office of the Recorder of LOS ANGELES County, California, executed by:  DENISE R. RICHEY,
A SINGLE WOMAN AND CATHERINE FREEMAN, AN UNMARRIED WOMAN AS JOINT TENANTS, as Trustor,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS), SOLELY AS NOMINEE FOR LENDER,
LOAN LINK FINANCIAL SERVICES, IT'S SUCCESSORS AND ASSIGNS, as Beneficiary, will sell at public auction
sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a
state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings
association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state.
Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held
by the trustee in the hereinafter described property under and pursuant to the Deed of Trust.   The sale will be made,
but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the
remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and
expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably
estimated to be set forth below.  The amount may be greater on the day of sale

Place of Sale: BY THE FOUNTAIN LOCATED AT 400 CIVIC CENTER PLAZA, POMONA, CA 91766.

Legal Description:  LOT(S) 9 OF TRACT NO. 25801, IN THE CITY OF RANCHO PALOS VERDES, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 763, PAGE(S) 68 AND 69 OF MAPS, IN
THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.
 EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW
A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF
RECORD.

3

Amount of unpaid balance and other charges: $1,392,982 57 (estimated)

Street address and other common designation of the real property:       28125 LOBROOK DRIVE
                                                                         RANCHO PALOS VERDES, CA 90275-3133
                                                                         APN Number:  7584-018-030
     The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common
designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares:
that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or
that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid
foreclosure by one of the following methods: by telephone; by United States mail; either 1st class or certified; by
overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 05-28-2013

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

_BRENDA BATTEN, ASSISTANT SECRETARY_

California Reconveyance Company
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA  91311
800-892-6902

| CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. |
| --- |

For Sales Information:
www.lpsasap.com or 1-714-730-2727
www.priorityposting com or 1-714-573-1965
www.auction.com or 1-800-280-2832

NOTICE TO POTENTIAL BIDDERS:  If you are considering bidding on this property lien, you should understand that
there are risks involved in bidding at a trustee auction.  You will be bidding on a lien, not on the property itself.  Placing
the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property.  You
should also be aware that the lien being auctioned off may be a junior lien.  If you are the highest bidder at the auction,
you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear
title to the property.  You are encouraged to investigate the existence, priority, and size of outstanding liens that may
exist on this property by contacting the county recorder's office or a title insurance company, either of which may
charge you a fee for this information.  If you consult either of these resources, you should be aware that the same
lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER:  The sale date shown on this notice of sale may be postponed one or more times
by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code.  The law
requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to
those not present at the sale.  If you wish to learn whether your sale date has been postponed, and, if applicable, the
rescheduled time and date for the sale of this property, this information can be obtained from one of the following three
companies:
LPS Agency Sales & Posting at (714) 730-2727, or visit the Internet Web site www.lpsasap.com (Registration required
to search for sale information) or Priority Posting & Publishing at (714) 573-1965 or visit the Internet Web site
www.priorityposting com (Click on the link for "Advanced Search" to search for sale information), or auction.com at 1-
800-280-2832 or visit the Internet Web site www.auction.com, using the Trustee Sale No. shown above.  Information
about postponements that are very short in duration or that occur close in time to the scheduled sale may not
immediately be reflected in the telephone information or on the Internet Web site.  The best way to verify postponement
information is to attend the scheduled sale.

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is Keesal, Young & Logan, 400 Oceangate, P.O. Box 1730, Long Beach, California, 90801-1730.

     On **November 20, 2013**, I served the foregoing document described as **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT** on the parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

> Mr. Dennis M. Alford
> 28125 Lobrook Drive
> Rancho Palos Verdes, CA  90275-3133
>
> *Plaintiff In Pro Per*

    ☒    **BY UPS**:  I caused such envelope(s), fully prepaid on account, to be placed within the custody of UPS at Long Beach, California.  I am readily familiar with Keesal, Young & Logan's practice for collection and processing of correspondence for overnight delivery and know that in the ordinary course of Keesal, Young & Logan's business practice, the document described above will be deposited in a box or other facility regularly maintained by UPS or delivered to an authorized courier or driver authorized by UPS to receive documents on the same date that it is placed at Keesal, Young & Logan for collection.

     Executed on **November 20, 2013,** at Long Beach, California.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Pam Lopez

KYL_LB1679141